Citation Nr: 1829731 
Decision Date: 07/18/18 Archive Date: 07/24/18

DOCKET NO. 10-15 287 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York


THE ISSUES

1. Entitlement to a higher rating for a right wrist disability status post injury with a surgically treated ununited fracture of the lunate bone with painful incompletely ankylosed wrist, Kienböck's and De Quervain's Disease, and Carpal Tunnel Syndrome (right wrist disability), rated as 40 percent disabling prior to August 7, 2013, and 50 percent thereafter.

2. Entitlement to a total disability rating based upon individual unemployability due to service-connected disability (TDIU) prior to August 7, 2013.


REPRESENTATION

Veteran represented by: Karl A. Kazmierczak, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran
ATTORNEY FOR THE BOARD

M. D. Bruce, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1985 to February 1988.

These matters come before the Board of Veterans' Appeals (Board) on appeal from an August 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office, and were remanded in June 2011 and September 2015.

In August 2010, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record.


FINDINGS OF FACT

1. The evidence demonstrates that the Veteran's right wrist disability manifested in pain and limitation of motion of the wrist and thumb throughout the period on appeal, as well as severe incomplete paralysis of the median nerve on and after August 7, 2013; the evidence does not reflect that the disability resulted in unfavorable ankylosis, complete paralysis of the median nerve, or loss of use of the right hand.

2. Resolving all reasonable doubt in the Veteran's favor, the Veteran's service-connected right wrist disability rendered her unable to secure and follow a substantially gainful occupation for the period on appeal prior to August 7, 2013.





CONCLUSIONS OF LAW

1. The criteria for an increased rating for a right wrist disability, rated as 40 percent disabling prior to August 7, 2013 and 50 percent thereafter, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.71a, Diagnostic Codes 5213, 5214, 5215, 5228, 4.114a, Diagnostic Code 8515 (2017).

2. The criteria for entitlement to a TDIU have been met on an extraschedular basis prior to August 7, 2013. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Neither the Veteran nor her representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

The Board has thoroughly reviewed all of the evidence in the Veteran's claims file. Although an obligation to provide sufficient reasons and bases in support of an appellate decision exists, there is no need to discuss, in detail, all of the evidence submitted by the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that the entire record must be reviewed, but each piece of evidence does not have to be discussed). The analysis in this decision focuses on the most salient and relevant evidence and on what the evidence shows or fails to show with respect to the matters decided herein. The Veteran should not assume that pieces of evidence, not explicitly discussed herein, have been overlooked. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (noting that the law requires only that reasons for rejecting evidence favorable to the claimant be addressed). When there is an approximate balance of evidence for and against an issue, all reasonable doubt will be resolved in the Veteran's favor. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule), and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017). Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning the higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal exertion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.40, 4.45, 4.59. In that regard, painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimal compensable rating for the joint. 38 C.F.R. § 4.59; see Burton v. Shinseki, 25 Vet. App. 1 (2011). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

The Veteran's right wrist disability is currently rated as 40 percent disabling prior to August 7, 2013, and 50 percent disabling thereafter, with the exception of periods from December 11, 2013, through January 31, 2014, and October 20, 2014, through November 30, 2014, in which the Veteran is receipt of temporary total disability ratings. As such, these periods are not for appellate consideration. 

The right wrist disability is currently rated pursuant to a hyphenated Diagnostic Code, listed as Diagnostic Code 8515-5213 for the rating prior to August 7, 2013, and Diagnostic Code 5213-8515 for the rating thereafter. Hyphenated Diagnostic Codes are generally used when a rating under one Diagnostic Code requires the use of an additional Diagnostic Code to identify the basis for the evaluation assigned. See 38 C.F.R. § 4.27. As the additional code is shown after a hyphen, it appears that the rating prior to August 7, 2013, has been based primarily on the criteria put forth in Diagnostic Code 5213, while the rating from that date forward is based on the criteria in Diagnostic Code 8515.

38 C.F.R. § 4.71a, Diagnostic Code 5213 refers to impairment of supination and pronation of the arm. A 40 percent disability rating is the highest rating available under this Diagnostic Code, and is assigned for loss of bone fusion with the major hand fixed in supination or hyperpronation. With respect to musculoskeletal impairment of the wrist, the highest rating available is 50 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5214, for unfavorable ankylosis of the major wrist in any degree of palmar flexion, or with ulnar or radial deviation. 
38 C.F.R. § 4.124a, Diagnostic Code 8515 refers to paralysis of the median nerve. A 50 percent rating is assigned for severe incomplete paralysis of the median nerve in the major arm. A 70 percent rating may be assigned for complete paralysis of the median nerve in the major arm manifested by such signs as the hand inclined to the ulnar side, the index and middle fingers more extended than normally, considerable atrophy of the muscles of the thenar eminence, the thumb in the plane of the hand (ape hand), pronation incomplete and defective, absence of flexion of index finger and feeble flexion of middle finger, the inability to make a fist with the index and middle fingers remaining extended, the inability to flex the distal phalanx of the thumb with defective opposition and abduction of the thumb at right angles to the palm, weakened flexion of the wrist, and pain with trophic disturbances. 

The Board has also considered whether any other Diagnostic Codes potentially pertaining to the wrist, hand, or fingers may be appropriate. Upon review, the currently assigned Diagnostic Codes best describe the Veteran's symptomatology; no other Diagnostic Code or combination thereof would result in a more appropriate or more favorable disability rating. See 38 C.F.R. §§ 4.7, 4.14.

The Veteran first underwent VA examination in connection with her claim in April 2008. She complained that she was not able to move her right thumb and had no grip in her right hand at all. The examiner noted that the Veteran had used splints on occasion, but was not using them at the present time. She was not able to do any lifting, pushing, or pulling with the right hand, and could drive but had to steer with her left hand only. The Veteran reported difficulty sleeping due to pain, as well as daily flare-ups of right wrist and thumb pain. She denied any totally incapacitating episodes over the past year as well as numbness of the hand. The examiner noted tenderness to palpation of the dorsum of the wrist and extending to the first dorsal compartment, with no evidence of atrophy of the intrinsic musculature of the hand. Range of motion revealed flexion to 20 degrees, extension to 10 degrees, radial deviation to 10 degrees, and ulnar deviation to 20 degrees. The examiner indicated that the Veteran moved through the ranges of motion with little discomfort, but complained of pain at the extremes of motion. The examiner noted that motor strength of the wrist in all motions was at most a 1 on a scale of 1 to 5. There was no evidence of joint swelling, crepitus, or sensory deficit of the hand. The Veteran was able to touch the proximal palmar crease with all fingers and finger adduction and abduction strength was normal. She was not able to thumb oppose any of the fingertips of the right hand, and thumb flexion and extension strength were nonexistent. The examiner noted absolutely no active motion of the metacarpophalangeal joint or the interphalangeal joint of the right thumb. Grip strength on the right was at most a 2 out of 5, and repetitive grip strength was less. The examiner opined that right hand function was diminished due to a complaint of pain on attempt at repetitive-motion testing, the extent and degree of which was not possible to determine due to the extreme subjectivity of the exercise. The examiner further indicated that while there was no active motion of the right thumb whatsoever, the thumb did have passive motion. 

The Veteran next underwent VA examination in August 2013. She again complained of total loss of use of the right thumb. She reported that she could not hold or grasp anything and had chronic pain of the hand and wrist radiating into the forearm. The Veteran described flare-ups with increased pain and decreased range of motion leading to loss of function. Range of motion testing revealed palmar flexion to 20 degrees and dorsiflexion to 20 degrees, with objective indication of pain at 10 degrees in each range. The examiner noted that pain prevented repetitive-use testing, and indicated that there was functional loss or impairment due to less movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. Wrist flexion and extension demonstrated normal strength and there was no indication of ankylosis. The examiner opined that the Veteran's right wrist disability impacted her ability to work due to limited use of the hand due to pain. In a September 2013 addendum opinion, the examiner opined that there was incomplete severe paralysis of the median nerve, with no unfavorable ankylosis. 

An additional opinion was obtained in December 2016, and the examiner opined that, while the Veteran had limitations, she did not have loss of use of the right hand. In a January 2017 addendum, the examiner elaborated that the Veteran's reported lack of use of the thumb limited grasping and holding things, but she was able to use her other fingers and the hand to move items in coordination with the other hand. The examiner also stated that the Veteran's right hand was more useful than a prosthesis, which would remove all grasping and decrease coordinated movements.

Treatment records and lay statements throughout the period on appeal reflect symptoms and complaints consistent with those noted on examination. The Veteran primarily complained of severe pain and difficulty using her thumb and wrist, as well as some finger numbness.

Upon review, the Board finds that an increased disability rating is not warranted at any point during the period on appeal. In that regard, prior to August 7, 2013, the evidence demonstrates that the Veteran's right wrist disability manifested in pain and limitation of motion of the right wrist and thumb, but did not result in unfavorable ankylosis or in severe incomplete or complete paralysis of the median nerve. On and after August 7, 2013, the evidence demonstrates that the right wrist disability manifested pain and limitation of motion of the right wrist and thumb as well as in severe incomplete paralysis of the median nerve; however, there is no indication of complete paralysis of the nerve at any point during the period on appeal. As such, there is no indication that a higher rating may be assigned under any pertinent Diagnostic Code.

While there is limitation of motion of the wrist evident throughout the period on appeal in addition to the impairment of supination and pronation and of the median nerve, the Board finds the assignment of an additional rating for such limitation would constitute impermissible pyramiding. In that regard, the primary manifestation of the Veteran's disability is limitation of motion and painful motion of the right wrist; the Board finds the currently assigned ratings address this manifestation, as such, an additional rating may not be assigned. See 38 C.F.R. § 4.14. Additionally, as the highest rating available for limitation of motion of the wrist absent ankylosis is 10 percent, assignment of a rating on this basis would not be more favorable to the Veteran. See 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Codes 5214 and 5215.

Furthermore, while the Veteran demonstrated limitation of motion of the right thumb, to the extent that assigning a separate rating for such would not constitute impermissible pyramiding, there is no evidence that such limitation manifested in a gap of more than one inch between the thumb pad and fingers as would be required for a separate compensable disability rating. See 38 C.F.R. § 4.71a, Diagnostic Code 5228.

The Board notes that special monthly compensation (SMC) is payable to a veteran for anatomical loss or loss of use of one hand. 38 U.S.C. § 1114(k). Loss of use of a hand will be held to exist when no effective function remains other than that which would be equally well served by an amputation stump at the site of election below elbow with use of a suitable prosthetic appliance. 38 C.F.R. §§ 3.350(a)(2), 4.63 (2017). While the issue of entitlement to SMC is not specifically on appeal, VA has a well-established due to maximize a claimant's benefits; as such, SMC is to be afforded when a veteran becomes eligible without need for a separate claim. The Board finds the issue of entitlement to SMC has been reasonably raised and should be addressed. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Bradley v. Peake, 22 Vet. App. 280 (2008).

Here, while the evidence demonstrates a significant level of impairment with respect to the Veteran's right hand, the VA examiner who provided opinions December 2016 and January 2017 opined that she did not have loss of use of the right hand, and that her right hand was more useful than a prosthesis, which would remove all grasping and decrease coordinated movements. As there is no medical evidence to the contrary, the Board finds the evidence does not reflect that the Veteran's right wrist disability results in loss of use of the right hand; accordingly, entitlement to SMC for loss of use is not warranted. 

TDIU

When a veteran's schedular rating is less than total (for a single or combination of disabilities), a total rating may nonetheless be assigned when the disabled person is unable to secure or follow a substantially gainful occupation. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2017); see also Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993); Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993); Pratt v. Derwinski, 3 Vet. App. 269, 272 (1992); Floore v. Shinseki, 26 Vet. App. 376, 383 (2013). 

Relevant to the current claim, a total disability rating may be assigned on an extraschedular basis, pursuant to the procedures set forth in 38 C.F.R. § 4.16(b), for veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in section 4.16(a). In fact, rating boards should submit to the Director, Compensation Service (Director), for extraschedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). 38 C.F.R. § 4.16(b). 

In this regard, the record reflects that, for the relevant period prior to August 7, 2013, the Veteran's combined disability rating was 50 percent, with 40 percent assigned for the right wrist disability and 10 percent for a tender right wrist scar. Consequently, the Veteran did not meet the threshold schedular criteria for consideration of a TDIU pursuant to 38 C.F.R. § 4.16(a); however, as noted in the Board's September 2015 remand, the evidence suggested that her service-connected right wrist disability may have rendered her unable to secure or follow a substantially gainful occupation. Therefore, the Board remanded the appeal for referral to the Director for consideration of assignment of an extraschedular TDIU under the provisions of 38 C.F.R. § 4.16(b), for the period prior to August 7, 2013. In February 2017, the Director reviewed the record and opined that entitlement to an extra-schedular TDIU for the applicable period was not warranted.

Upon a review of the record, the Board finds that the record demonstrates that the Veteran's right wrist disability rendered her unable to secure or follow a substantially gainful occupation for the period on appeal prior to August 7, 2013.

The Veteran reported that she had two years of college education and previous work experience as a bartender, accountant and teacher's aide in a February 2004 VA Application for Increased Compensation Based on Individual Unemployability (VA Form 21-8940). VA examiners have opined that the Veteran's right wrist disability resulted in significant loss of function of the right wrist, hand, and fingers, with essentially no remaining function in the right thumb. Furthermore, the record reflects competent and consistent assertions from the Veteran that she is unable to type or write due to the impairment of her dominant hand; her previous positions in accounting and teaching were rendered too difficult to continue as a result of her diminishing function. 

Based on the foregoing, the Board finds that the evidence of record is at least in equipoise as to whether the Veteran's service-connected right wrist disability prevented her from securing or following substantially gainful employment during the relevant appeal period. In this regard, the Board finds the opinions of the VA examiners regarding the loss of function of the right hand to be highly probative and the Veteran's lay statements consistent and compelling. In addition, while the Director provided a negative opinion, no rationale was provided for the ultimate conclusion that the Veteran's educational attainment and work history would not preclude her from sedentary work or a professional environment consistent with her previous occupations, particularly in light of the Veteran's assertions that such positions were not sustainable due to her essential inability to write or type effectively. 

Therefore, resolving all doubt in the Veteran's favor, the Board finds that for the period on appeal prior to August 7, 2013, her service-connected right wrist disability prevented her from securing or following substantially gainful employment. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert, 1 Vet. App. at 53-56. Therefore, entitlement to a TDIU on an extraschedular basis prior to August 7, 2013, is warranted.

Neither the Veteran nor her representative has raised any other issues with respect to the increased rating claims, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).



ORDER

Entitlement to an increased rating for a right wrist disability, rated as 40 percent disabling prior to August 7, 2013 and to 50 percent thereafter, is denied.

Entitlement to a TDIU for the period on appeal prior to August 7, 2013, is granted on an extraschedular basis.



______________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs